UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DAVID SCALES, | ] |
| Plaintiff, | ] |
| vs. | ] 7:09-CV-00553-LSC |
| HARSCO CORPORATION and HECKETT MULTISERV, | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, filed by Hackett Multiserv, a division of Harsco Corporation ("Defendant" or "Multiserv"), on February 10, 2010, seeking to dismiss the remaining claims of discrimination, failure-to-promote, and hostile work environment.  (Doc. 22.)  David Scales ("Plaintiff" or "Scales") filed his Complaint in this Court on March 19, 2009 (Doc. 1), alleging that Defendant discriminated against him by demoting him while other white employees were not demoted, failing to promote him and instead promoting other white employees, and subjecting him to a hostile work environment in which he was yelled at and

demeaned. The issues raised in the motion for summary judgment have been briefed by the parties and are now ripe for decision. Upon full consideration of the legal arguments and evidence presented, Defendant's motion will be GRANTED.

II.   Facts.[1]

Plaintiff, an African-American male, began working for a predecessor of Multiserv in 1996. Following the acquisition of his employer by Defendant, Plaintiff was promoted to Foreman in July of 2000, performing the duties of General Foreman in Tuscaloosa. In 2005, Multiserv closed its Tuscaloosa location. Plaintiff was transferred to Multiserv's Birmingham location and placed in a Foreman position.

In 2007, Plaintiff was denied a promotion to Superintendent in Fairfield. Doug Mullins, a white male, was given the position instead. Defendant maintains that the position required a maintenance background which Mullins possessed and Plaintiff did not. In 2007, Plaintiff also was

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

denied promotion to Safety Coordinator at the Birmingham site.  This position was given to Mike Banna, a white male.  Defendant argues that Banna had a good reputation with the Birmingham customer, CMC Steel, and, unlike Plaintiff, had no complaints lodged against him.

In February 2008, Plaintiff was demoted from Foreman to Crane Operator.  Defendant maintains that, due to the poor financial performance of its Birmingham location, it was forced to reduce its workforce.  After deciding to eliminate two of its five foreman positions, Plaintiff and a white foreman, Herman Tidwell, were selected based on the belief of Ken Orndoff, Defendant's Site Superintendent in Birmingham, that they were the two lowest performing foremen at the site.  Plaintiff contends that this demotion was the culmination of years of racial abuse and discrimination.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United*

*States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party." *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)). "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV. Analysis.

    A. Discrimination and Failure to Promote.

Plaintiff argues that Defendant illegally discriminated against him based on his race by demoting him while similarly situated white foremen

were allowed to keep their positions. Plaintiff also argues that he was discriminated against because he was not given a superintendent position at Defendant's Fairfield location or the Safety Coordinator position at the Birmingham location. Because Plaintiff has not asserted that he has direct evidence of discrimination, we analyze these claims using the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of racial discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once the plaintiff has demonstrated a *prima facie* case exists, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the [adverse employment action]." *Id*. This burden is "exceedingly light. . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)(citation and internal quotation marks omitted)). Lastly, the burden returns to the plaintiff to prove by a preponderance of the

evidence that the defendant's reasons were simply pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

To establish a *prima facie* case of discrimination, "plaintiff must show that: (1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified to do the job." *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006). Defendant does not dispute that Plaintiff is a member of a protected class, that he was subjected to an adverse employment action, or that he was qualified for the position he held. Defendant maintains, however, that due to declining performance after his transfer to the Birmingham location, Plaintiff had discipline and performance issues that distinguished him from the white foremen who were not demoted.

The evidence presented to the Court reveals a confluence of non-discriminatory circumstances that led to Scales's eventual demotion. During his tenure at the Tuscaloosa plant, Plaintiff was apparently an exemplary employee. Steve Stone ("Stone"), the Tuscaloosa Site Superintendent and Plaintiff's immediate supervisor, shepherded Plaintiff from Foremen to General Foremen, the second-highest ranking position at the site. (Doc. 23, Ex. C, Stone Aff. at ¶1). In 2005, with the Tuscaloosa plant closing, Plaintiff asked that he be transferred to Defendant's Birmingham site. (Doc. 23, Ex. A., Scales Depo. at 57:11-19.) Stone told Scales that he needed him to stay in Tuscaloosa. Scales testified that Stone told him he should "stay there and help out because I had working knowledge of the mill there and a good relationship with the people at the mill there. And I was pretty much running the job there. So, he asked that – to leave me there. And he said, when you finish, come up to Birmingham." *Id*. at 58:11-18. When Multiserv wrapped up its business in Tuscaloosa, Scales was one of a handful of employees who the company moved to Birmingham. *Id*. at 59. The move to Birmingham, however, proved to be unfruitful, as Scales relationship with

Multiserv's Birmingham client, CMC Steel, was not as productive as his previous experience in Tuscaloosa.

In 2006, the deficiencies in Scale's performance at the Birmingham plant began to manifest themselves.  On January 6, 2006, Scales recieved a written warning of poor job performance for failing to follow procedure resulting in significant mistakes at the plant's melt shop and railroad processing center.  (Doc. 23, Ex. A., Scales Depo. Ex. 8.)  These mistakes resulted in complaints from CMC stating, "As you know this is not the first time we have had this problem.  But what are we going to do too [sic] solve it." *Id.*  In December 2006, Multiserv management met with Scales to discuss complaints from CMC, noting in the discussion, "We told him his shift was to [sic] only crew being complained about and it must not continue." *Id.*  Scales stated in his deposition, "I worked hard on that.  I just couldn't get it all done.  I worked as hard as I could on it."   (Doc. 23, Ex. A., Scales Depo. at 72:8-10.)  Of all the foremen at the Birmingham site, Scales was the only one with documented repeated complaints from CMC Steel management.  (Doc. 23, Ex. F, Heil Aff. at ¶7.)

Despite his best efforts, however, problems continued to manifest themselves at the Birmingham Mill.  In 2007, Ken Orndoff ("Orndoff") became Site Superintendent for Multiserv at the Birmingham site.  Orndoff initially had a good opinion of Scales, stating, "From what I understood, he was a good foreman down in Tuscaloosa, when he worked for Steve [Stone] down in Tuscaloosa.  Steve brought him to Birmingham with him when Steve got the job at the site that I took over at CMC.  Brought him up from Tuscaloosa.  So there was an automatic respect there for the guy, since there's only a couple people Steve brought with him and one of them was David [Scales]."   (Doc. 23, Ex. G., Orndoff Depo. at 117:1-9.)  Orndoff's opinion of Scales rapidly deteriorated, however, as he "couldn't get him to be a foreman."  *Id*. at 117:11-12.  Instead, Scales spent much of his time running the locomotive, a job for two of the plant's hourly workers.  *Id*. at 117:10-20.  Orndoff eventually forbade Scales from using the locomotive, at which point Scales began to sit under some shade trees, despite Orndoff's request that he stay in the middle of the site to perform his foreman duties during his shift.  *Id*. at 117:21-118:13.

In January of 2008, Ed Ramsey ("Ramsey"), the Area General Manager for Multiserv, informed Orndoff that because of poor financial performance at the Birmingham site, costs would have to be cut. (Doc. 23, Ex. D, Ramsey Aff. at ¶2.) Although January had been a profitable month for the plant, during the final eight months of 2007, the plant had lost $146,207. (Doc. 30, Ex. 14.) In response to this directive from Ramsey, Orndoff formulated a plan by which the two lowest performing shift production foremen would be eliminated. (Doc. 23, Ex. G., Orndoff Depo. at 97-100.) Of the five production foremen, four were white and Scales was black. Orndoff recommended eliminating Scales and Herman Tidwell ("Tidwell"),[2] a white foreman, based on Scales performance and the complaints against him and based on Tidwell's growing absenteeism and equipment damage. *Id.* at 117-19, 127-28; Doc. 23, Ex. E, Heil Depo. at 62-63, 105-07, 109-11, Ex. 5. Scales was never terminated. Rather, Multiserv management determined that due to his length of service and generally good record while at the Tuscaloosa plant, Scales would be demoted to an hourly position. (Doc. 23, Ex. E, Heil Depo. at 63:12-18; Ex. G, Orndoff Depo. at 117-19.) Eric

---

[2] Tidwell, after being selected for termination, was involved in an incident that led to his early termination. (Doc. 23, Ex. E, Heil Depo. at 62-63.)

Busboom, the manager of the CMC Steel melt shop in Birmingham, was informed of Multiserv's decision and agreed with the plan of action. (Doc. 23, Ex. H, Orndoff Aff. at ¶2.) Following approval by Multiserv managers of Orndoff's recommendation, Scales was informed that his position had been eliminated and was offered an hourly operator job in Fairfield, which he accepted. (Doc. 23, Ex. A., Scales Depo. at 33-35.) In the two years since Multiserv decided to eliminate two foreman positions at the Birmingham site, no additional production foremen have been hired. (Doc. 23, Ex. F, Heil Aff. at ¶7.)

Plaintiff has failed to establish a *prima facie* case of racial discrimination. Scales was the only Multiserv foreman with repeated complaints from Defendant's customer in Birmingham. Therefore, he has failed to show how he was treated less favorably than "similarly situated employees outside of [his] protected class." *Burke-Fowler*, 447 F.3d 1323. In fact, Scales was treated more favorably than Tidwell, a white foreman, in that he was only demoted while Tidwell was terminated.

Even if Scales were able to make out a *prima facie* case of discrimination, Defendant has presented a non-discriminatory reason for his

demotion. Plaintiff claims that this non-discriminatory reason is pre-textual. To show that a proposed non-discriminatory justification is pre-textual, however, it is not enough to cast doubt on the judgment of the employer. Rather, "A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citations omitted).

Scales performance deteriorated after his transfer to Tuscaloosa, and there are documented instances in which Multiserv's customer in Birmingham complained about his performance. Scales attempts to show that this justification is pre-textual by arguing that his lapses while at the Mill were "routine," that Multiserv did not terminate any hourly employees, and that Multiserv should have terminated less experienced foremen rather than Scales. (Doc. 29 at 36-38.) None of these justifications, however, refute the undisputed and documented fact that Scales was not performing to the satisfaction of CMC Steel — a third-party who has not been accused of discriminatory behavior and apparently has no motivation to unjustly smear Plaintiff. The Court does not "sit in judgment of the wisdom of an

employer's selection," and "a subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Springer*, 509 F.3d at 1350, 1349. In fact, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext." *Id*. at 1349 (citations omitted). Plaintiff "may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." *Id*. at 1350. Plaintiff attempts to do just this, proposing that this Court weigh his arguments that he should have been retained against Defendant's justifications for his demotion. Such a balancing act may show that an employer's decision was unwise, but it will not show that it is pre-textual. As Plaintiff has failed to refute Defendant's non-discriminatory justification for its employment decision, he has failed to carry his burden. As to the discrimination claim, summary judgment is due to be GRANTED.[3]    Scales's failure to promote

---

[3] Plaintiff has filed two motions to strike, one for the affidavit of Ken Orndoff and the other for the affidavit of Ed Ramsey. (Docs. 27 & 28.) Despite Plaintiff's claims that

claims are similarly lacking.  The Eleventh Circuit has stated, "A plaintiff must show that the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  *Harrell v. State of Ala. Dep't of Educ.*, 342 Fed. Appx. 434, 436 (11th Cir. 2009) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)).  Scales claims two instances in which he was passed over for promotion.  The first was for a position at the Fairfield Site in 2007.  Scales alleges that he was as qualified as Doug Mullins ("Mullins"), the white employee who was selected for the position.  The undisputed evidence shows otherwise.  Because only two to four Multiserv employees work at the Fairfield site, Multiserv has determined that the plant superintendent must have a maintenance background and be able to perform necessary maintenance on equipment.  (Doc. 23, Ex. C, Stone Aff. at ¶4; Doc. 23, Ex. E, Heil Depo. at 201-203.)  Mullins was promoted from Maintenance Foreman to Assistant Superintendent in 2006 and then to

---

these affidavits contradict these individuals' deposition testimony, it is clear that they are perfectly in keeping with that testimony.  It is not contradictory to testify that Scales's position was eliminated for purely financial reasons but that he himself was selected because of performance issues.  Therefore, Plaintiff's motions to strike are due to be DENIED.

Superintendent in 2007. (Doc. 23, Ex. E, Heil Depo. at 201.) Unlike Mullins, Scales had no maintenance background or experience with Multiserv. (Doc. 23, Ex. C, Stone Aff. at ¶9; Doc. 23, Ex. E, Heil Depo. at 201-203.) Obviously, this is not an instance in which Scales was passed over in favor of an equally or less-qualified white employee. Scales has failed to carry his burden and summary judgment is due to be GRANTED on this count.

Scales also claims discrimination because he was not promoted to Safety Coordinator at the Birmingham site. Instead, the position was given to Mike Banna ("Banna"). By 2007, as noted above, Scales's relationship with CMC Steel had deteriorated to the point that CMC Steel was complaining to Defendant about his efforts. The opposite is true of Banna. Banna had worked for CMC Steel immediately prior to his hire by Multiserv, was familiar with CMC Steel's safety procedures, had a good relationship with CMC Steel, and had no complaints lodged against him. (Doc. 23, Ex. C, Stone Aff. at ¶10, 11, 14; Doc. 23, Ex. F, Heil Aff. at ¶4.) Plaintiff has provided no evidence to dispute these assertions by Defendant, much less evidence to show that his qualifications were so superior to Banna's as to obviously constitute discrimination. Therefore, summary judgment is due to be GRANTED on this count.

B.     Hostile Work Environment Claim.

A plaintiff seeking to establish a hostile work environment must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  More specifically, "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* (citations omitted).  While there is no magic number of racial insults or offenses that constitute a hostile work environment, the court has held that the environment must be one where "the racial slurs allegedly spoken by co-workers [were] so commonplace, overt and denigrating that they created an

atmosphere charged with racial hostility." *Edwards v. Wallace Cmty. College*, 49 F.3d 1517, 1521 (11th Cir. 1995) (citations omitted).

Scales has failed to establish a hostile work environment claim. Scales generally describes a hostile environment, pointing specifically to four alleged comments made over the years of his employment with Defendant. (Doc. 23, Ex. A., Scales Depo. at 82-84, 95-96, 106-109, 124, 144-150.) Two of these comments, referring to "yard monkeys" and "niggers," are alleged to have been made by Stone. Two others, "gorilla" and "that man" were allegedly made by Banna. But even if these comments were sufficiently severe and pervasive enough to meet the standard in the Eleventh Circuit, Plaintiff has failed to provide any evidence that these comments were actually made. Plaintiff has acknowledged that he was not present for any of these comments. *Id.* at 82-84, 144-150. Furthermore, Plaintiff cannot recall who informed him of the comments or when some of the comments were made. *Id.* at 82-85. Finally, even if the comments were made, Plaintiff has not shown that they were directed at him. *Id.* at 82-84, 144-150. *See McCann v. Tillman,* 526 F.3d 1370, 1379 (11th Cir. 2008) (finding it a significant factor that racial epithets were not directed at the plaintiff or spoken in her presence); *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)

(finding "mere utterance of an . . . epithet which engenders offensive feelings in a employee" is not sufficient to establish a hostile work environment).

As Plaintiff has failed to produce evidence of the alleged comments or to show that they were pervasive enough to constitute a hostile work environment, he has failed to meet the Eleventh Circuit standard. Therefore, Defendant's motion for summary judgment is due to be GRANTED.

V. Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted as to all of Plaintiff's claims. A separate order in conformity with this opinion will be entered.

Done this <u>18th</u> day of <u>May 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671